OPINION OF THE COURT
Howard Miller, J.
It is ordered that the motion for summary judgment is denied, the cross motion for summary judgment granted, and defendant is entitled to judgment declaring that any claim by plaintiff Sharon Rifkin for damages to which she is determined to be entitled under the supplemental uninsured motor *142 ist coverage of each of the two policies issued to plaintiff Irene Rifkin by defendant, shall be covered by each policy equally, up to a total maximum coverage of $100,000, with costs and disbursements to defendant.
Plaintiffs bring this action to declare the rights of the parties under two separate automobile liability insurance policies issued to plaintiff Irene Rifkin by defendant. On August 23, 1990, plaintiff Sharon Rifkin, while operating a vehicle owned by Irene Rifkin, was involved in an automobile accident with a vehicle owned by Elizabeth Reda and driven by Denise Reda. Plaintiffs Sharon and Leonard Rifkin have instituted suit against the Redas and that action is presently scheduled for trial May 24, 1993. Although not stated in the motion papers on this motion, at a pretrial conference on March 4, 1992 in the Rifkin v Reda case, counsel for the Redas represented to the court that the insurance coverage for the Reda vehicle is $15,000/$30,000. The fact that the Reda case is presently pending does not preclude plaintiffs from pursuing this proceeding (Matter of Allstate Ins. Co. v Ruberto, 71 Misc 2d 473).
Plaintiff Sharon Rifkin alleges that she has sustained damages which will exceed the available insurance from the Reda carrier and seeks underinsurance coverage pursuant to the terms of two policies issued to Irene Rifkin, her mother-in-law, who resides in the same household with Sharon Rifkin. Each policy, issued by State Farm Mutual Automobile Insurance Company, provides a maximum limit of underinsurance coverage of $100,000. There is no dispute that Sharon Rifkin is insured under the terms of both policies.
The supplementary underinsured motorist (SUM) endorsement of each policy provides that if similar insurance is available, the liability of the insurer "shall not exceed that of the coverage with the highest limit of liability” and that the insurer is liable only for its proportionate share. Defendant argues that the foregoing provisions require each policy to contribute equally, since the limits of SUM liability in each policy are the same, but that Sharon Rifkin may not recover more than $100,000 by virtue of Insurance Law § 3420 (f) (2). That section provides that: "(2) Any such policy shall, at the option of the insured, also provide supplementary uninsured motorists insurance for bodily injury, in an amount up to the bodily injury liability insurance limits of coverage provided under such policy, subject to a maximum of one hundred thousand dollars because of bodily injury to or death of one *143 person in any one accident and, subject to such limit for one person, up to three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident.”
Plaintiffs argue that the foregoing provision is not intended to prohibit "stacking” of multiple coverages, but is only intended to limit the coverage in each policy to a maximum of $100,000.
Policy stacking, which is the aggregation or pyramiding of available insurance coverage, continues to be litigated extensively throughout the United States. Many States have enacted either "anti-stacking” or permissive stacking statutes relating to underinsured motorist coverages; New York has not done so. There is no statutory proscription against stacking SUM coverage in New York State, although the Insurance Department enacted a no-stacking regulation effective October 1, 1992.
Extensive research has revealed but one other New York case on this issue. In Matter of Mackie v Metropolitan Ins. Co. (152 Misc 2d 384) the court held stacking to be permissible. Cases from other jurisdictions offer scant guidance due to the disparate statutory language relating to an insurer’s liability on a SUM claim. A number of States prescribe minimum coverage requirements and generally permit stacking; other States limit the insurer’s liability according to a specific formula; and yet other States specifically prohibit stacking. Nevertheless, the general national trend is to prohibit expanding SUM coverage beyond the limits fixed in the enabling statute, despite the insured’s having more than one policy available (see, e.g., 45 CJS, Insurance, § 980.1, at 1181).
In analyzing the intent of the Legislature regarding SUM liability, earlier cases interpreting the limits of uninsured motorist (UM) protection under Insurance Law § 3420 (f) (1) are instructional, since "as a matter of logic no absolute distinction can be drawn between uninsured motorists coverage and underinsurance coverage” (Morris v Progressive Cas. Ins. Co., 662 F Supp 1489, 1494).
In 1983, the Fourth Department in Sisson v Travelers Ins. Cos. (94 AD2d 953) refused to permit an insured to stack $10,000 of UM coverage when there was but one policy covering two vehicles, relying on a lower court case, Matter of Spychalski (Utica Mut. Ins. Co.) (88 Misc 2d 129, revd on other grounds 58 AD2d 193, affd 45 NY2d 847). In Sisson, the Court *144 found that even though the insured had paid two premiums for the UM coverage on both cars, it did not entitle the insured to collect under both coverages. Significantly, the appellate courts specifically declined to rule on the stacking issues when reviewing Spychalski.
In 1984, the Second Department in Matter of Allstate Ins. Co. v Libow (106 AD2d 110) refused to permit stacking of UM and SUM claims, noting that a budget report contained in the Bill Jacket to the 1979 statutory amendments to the Vehicle and Traffic Law considered the argument that the bill should have raised the personal injury ceiling but declined to do so, stating " 'This bill would increase the liability limits on insurance payments for deaths resulting from motor vehicle accidents, but would not change the present ceiling on insurance payment[s] for injuries * * * Such limits would remain at $10,000 for injuries to one person’.” (Supra, at ,116.) It is notable that the budget report viewed the $10,000 UM coverage as a "ceiling.”
In 1985, the Third Department in Matter of Nationwide Mut. Ins. Co. v Miller (111 AD2d 438) refused to allow stacking of UM coverage under two policies owned by husband and wife, respectively. In citing Sisson (supra), Spychalski (supra) and Allstate (supra), the Court stated: "It is uncontested, however, that Insurance Law § 3420 (f) (1) limits the recovery of an insured under the uninsured motorist indorsement to $10,000 per person and $20,000 per occurrence (see, 30 NY Jur, Insurance, § 1244, at 686 [1963]). Further, the relevant case law has consistently prohibited 'stacking’ of such insurance coverage in similar situations * * * The prohibition against stacking of coverage makes particular sense in regard to the situation presented by this case. While respondents have two policies, there has only been one 'occurrence’. Accordingly, the $20,000 limitation is clearly applicable here.” (Matter of Nationwide Mut. Ins. Co. v Miller, supra, at 439.)
In that case no extra premium had been paid for SUM coverage.
In 1987, the United States District Court for the Southern District of New York observed that "New York courts have consistently resisted attempts by consumers to stack two or more uninsured motorist endorsements, implying that they take the $10,000/$20,000 maximum to establish an absolute ceiling on recovery under § [3420] (f) (1) for bodily injury caused by uninsured motorists in accidents in New York *145 State” (Morris v Progressive Cas. Ins. Co., supra, at 1493, citing Matter of Allstate Ins. Co. v Libow, supra, and Sisson v Travelers Ins. Cos., supra). Nevertheless, that same year, the Third Department, in Di Stasi v Nationwide Mut. Ins. Co. (132 AD2d 305), while disallowing intrapolicy stacking, allowed the stacking of SUM coverages contained in two separate policies. In that case, however, the stacked coverage totalled only $60,000.
Steinberg v State Farm Mut. Auto. Ins. Co. (181 AD2d 766 [2d Dept 1992]) and Carlino v Lumbermens Mut. Cas. Co. (74 NY2d 350), relied upon by plaintiffs, are not applicable to the issue sub judice. In Carlino, the Court of Appeals, interpreting 11 NYCRR 60.1 with regard to excess liability insurance, held that an insured may recover under two policies to the full extent of each policy regardless of a provision in each policy attempting to limit recovery to the policy with the highest limit of liability. That regulation is not at issue here; SUM coverage is governed by 11 NYCRR 60.2. Furthermore, although SUM coverage has been referred to as “excess” coverage, the monetary limitations contained in Insurance Law § 3420 (f) (2) were neither germane to, nor considered by, the Courts in Steinberg and Carlino.
In summary, while Di Stasi (supra) permits stacking of SUM coverage contained in the two separate policies, Allstate (supra) and Nationwide (supra) have held that the maximum amounts set forth in the statute operate as a ceiling on an insurer’s liability. The principles adopted by the Third Department in Matter of Nationwide Mut. Ins. v Miller (supra) relating to UM coverage can similarly be applied to SUM. In this case, there has been but one occurrence and Insurance Law § 3420 (f) (2) imposes a ceiling on the recovery of an insured of a maximum of $100,000 “in any one accident.” This is so, despite the fact that a separate premium was paid for coverage under two policies (Sisson v Travelers Ins. Cos., supra).
Such view is consistent with the public policy expressed in the UM and SUM legislation. Until 1965, uninsured motorist protection was provided by the Motor Vehicle Accident Indemnification Corporation (MVAIC) and the limit of that agency’s liability was prescribed by statute to be $10,000/$20,000. By chapter 322 of the Laws of 1965, each insurer undertook the duties and liabilities formerly assumed by MVAIC and were entitled to collect premiums for the provisions of such coverage (Public Serv. Mut. Ins. Co. v Katcher, 36 NY2d 295). When *146 reassigning the uninsured motorist risk to private insurers, the Legislature retained the statutorily imposed $10,000/$20,-000 ceiling on liability formerly afforded MVAIC, thus evidencing an intent to limit an insurer’s liability on mandated UM coverage. When enacting the SUM provisions, the Legislature continued in this vein by including language limiting the insurer’s maximum obligation to provide coverage to $100,000/$300,000.
A review of SUM statutes enacted by other States indicates that most States, while prescribing minimum coverage which must be offered, have not imposed a maximum recovery by statute. By imposing a maximum limit of liability, New York State clearly intended something more than the limited interpretation plaintiffs urge.
Additionally persuasive is the budget report contained in the Bill Jacket to the 1977 amendments, which notes that SUM coverage was created for the purpose of affording "protection to the insured up to the level of his own liability coverage, subject to a maximum of $100,000” (Budget Report, Bill Jacket, L 1977, ch 892) and the Insurance Department interpretation of the statute, as reflected in its current regulations.
Insurance Department regulation (11 NYCRR 60.2.3), effective after October 1, 1992, requires a SUM endorsement to contain the following language: "7. Non-Stacking: Regardless of the number of vehicles involved, persons covered, claims made, vehicles or premiums shown in this policy, or premium paid, the limits, whether for uninsured motorists coverage or supplementary uninsured motorists coverage, shall never be added together or combined for two or more vehicles to determine the extent of insurance coverage available to an insured injured in the same accident.”
During the comment period when this regulation was being circulated, the Department, in addressing an objection to this proposed section, indicated that such language was included: "to reflect the Department’s interpretation of the legislative intent that an insured should only be able to recover under SUM coverage the same amount that the insured would purchase for bodily injury liability coverage to cover the insured’s own negligence with respect to third parties. Stacking of benefits would not only permit recoveries in excess of that amount but would also result in additional claim costs, *147 resulting in more expensive and less affordable SUM coverage.” (New York State Register, July 8, 1992, at 10.)
For the foregoing reasons, this court respectfully disagrees with the determination reached in Mackie v Metropolitan Ins. Co. (152 Misc 2d 384, supra).